IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OSCAR SALOMON,

        Petitioner,

v.                                                                                   CIV 07-0740 BB/KBM

STANLEY MOYA, Warden, et al.,

        Respondents.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

    Petitioner Oscar Salomon seeks habeas relief under 28 U.S.C. § 2254 claiming that the evidence was insufficient to convict him and that his trial attorney was ineffective because he failed to raise certain objections. *See Doc. 1.* Because Salomon filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997).

    Although sufficiency of the evidence was not raised in the direct appeal, the

counseled briefs thoroughly discussed all of the evidence at trial and the fact that trial counsel did not object when certain evidence was introduced in taped form.[1]  I therefore find that all of the issues can be resolved on the record presently before me, and neither expansion nor an evidentiary hearing are necessary.  *E.g., Anderson v. Attorney General of Kansas,* 425 F.3d 853, 858-59 (10th Cir. 2005); Rules 7, 8(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.

## I.  Factual Background

In June 1999, a man entered the home of two women who lived in the same neighborhood in Las Cruces.  One of the victims, an eighty-one year old woman, was viciously raped over a two-hour period.  The other woman's purse was stolen.  *See Exh. W* at 1, *Exh. AA* at 8-9, 12.

The woman who suffered the sexual assault eventually escaped and ran toward her neighbor's house screaming for help.  Her assailant stopped by a tree to pull on his pants and then chased after her.  When the neighbor answered his door, he spotted the man and chased after him for a while.  Eventually the neighbor lost sight of the fleeing man and the officers who had been dispatched to the scene

---

[1] Unless otherwise noted, all citations to Exhibits are those attached to Respondents' Answer.  *See Doc. 8.*

asked him to discontinue the chase.  Yet another female neighbor heard the commotion and saw the intruder when he was chasing the rape victim.  She confronted and yelled at him while dialing 911 for help.  The next day, the rape victim found a ring belonging to her in sidewalk crack near the area where her assailant paused to dress.  *See Exh. Z* at 10-11; *Exh. AA* at 10-11, 13.

On the same night as the rape, approximately a half a mile away and a little more than half an hour later, another woman, Mrs. Robertson, awoke to see a man standing in her living room.  When she screamed and ran at him, he took her purse and left.  She followed in her car and also called 911.  Within four minutes of being notified of the second incident, an officer found Petitioner in the area and detained him.  Mrs. Robertson's purse was later found near where Petitioner was located. *See Exh. Z* at 9-11; *Exh. AA* at 12.

The officers immediately conducted a "show-up" of witnesses to see if they could identify Salomon as the perpetrator of these crimes.  *See, e.g., Exh. W* at 1; *Exh. AA* at 12-13.  The neighbors who helped the rape victim and the robbery victim identified Petitioner at the show-up with varying degrees of certainty.  The neighbor who chased the assailant identified Petitioner at the show up saying the he "'looks like' the man he had been chasing."  *Exh. Z* at 10; *see also Exh. AA* at 11. When he was shown a six-person photo array at a later time, he chose Petitioner's

picture "real quick," *Exh. AA* at 11, and wrote on the line-up "'I think this is the man I saw,'" *Exh. Z* at 10.  The rape victim's neighbor who called 911 identified Petitioner at the show-up saying "'That was the man, no doubt.'"  *Exh. Z* at 11; *see also Exh. AA* at 11.

Mrs. Robertson was less certain that Salomon was the individual who had stolen her purse.  At the show-up, she said Petitioner "had the same 'general build' as the man in her house . . . that 'it looked like the same shirt' [and] that the clothes were an exact match to those of the person who had been in her home." *Exh. Z* at 9-10; *see also Exh. AA* at 12-13.  However, she also indicated that she did not "get a good enough look at the intruder's face to be able to recognize him again."  *Exh. AA* at 13.  Mrs. Robertson stated that Petitioner was "'possibly . . . the person'" who was in her home, but "'if [she] passed him on the street, [she] wouldn't'" recognize him.  *Exh. Z* at 10.

The rape victim positively identified Petitioner as the perpetrator.  Within two weeks of the incident, the rape victim picked him out of the six-person photo array "immediately:  'it was clear as day.'" *Exh. AA* at 12; *see also Exh. Z* at 9 (same).  During a later pretrial hearing, she again identified him saying "that must be him other there," and indicating the defendant who was in an orange jumpsuit. *Exh. Z* at 9; *Exh. AA* at 12.

The police questioned Petitioner on the night of the incidents, and he made a number of incriminating statements. At some point in the interview, Salomon admitted to being in both homes and to stealing Mrs. Robertson's purse. He even declared that he had thought about having sex with the rape victim, but that he did not do so because he did not want to hurt her. According to his version of events, he had only touched her on the shoulder, and she fell down. *Exh. Z* at 12; *Exh. AA* at 15.

## II. Procedural Background

Due to competency proceedings, Petitioner was not brought to trial until February 2004, almost five years after the events took place. *See, e.g., Exh.* A at 1. Petitioner was in special education classes from the seventh through eleventh grades, and a test after his arrest showed Petitioner had a verbal IQ of 70 and a performance IQ of 90-92, which indicated a "cognitive disruption." *See Exh. Z* at 2; *Exh. AA* at 15. After two competency evaluations, the trial judge found Petitioner incompetent to stand trial.

At a hearing held pursuant to NMSA § 31-9-1.5 ("commitment hearing"), the trial judge further found that there was sufficient evidence for ten of the eleven charges and that Petitioner a "danger" to others, and ordered him confined at the

Las Vegas Medical Center. At that commitment hearing, the judge refused to suppress Salomon's statements to the police finding that Petitioner was properly Mirandized and rejecting Petitioner's arguments that he was incompetent to waive his *Miranda* rights. *See Exh. Z* at 1-6; *Exh. AA* at 2-4; *see also, e.g., Exhs. B-E*.

The defense unsuccessfully appealed the trial judge's rulings. After those proceedings concluded, evidently new competency evaluations were performed and Petitioner then stipulated that he was competent to stand trial. The trial judge denied a renewed motion to suppress Petitioner's statements to the police. *See Exh. U* at 3; *see also Exh. Z* at 6-8; *Exh. AA* at 4-6; *Exhs. F-Q*.

Sexual assault kits taken from the victim and Petitioner did not positively identify Petitioner because there was no ejaculate present. The judge read to the jury a stipulation by the parties that the "'DNA testing in this case neither excludes nor includes the defendant.'" *Exh. AA* at 14; *see also, e.g., Exh. Z* at 9, 13. Indeed, no physical evidence, such as fingerprints or hairs or fibers or other potential sources of DNA, connected him with the crimes. Instead, the State's case consisted entirely of victim and eyewitness testimony, the circumstantial evidence of Petitioner being found in the general area, and Petitioner's incriminating statements.

Not all of the witnesses presented their testimony live during trial. For

example, the State introduced the rape victim's videotaped testimony from the commitment hearing, which had been preserved "out of concern for her age and her continuing ability to testify." *Exh. Z* at 9. The State also introduced a taped interview she gave to an officer soon after the incident. These tapes recounted the rape, her escape, and her identifications of Salomon from the photo array and in court. The defense did not object to the admissibility of either tape. *See Exh. Z* at 9, 12; *Exh. AA* at 7-12.[2]

As for live witnesses at the trial, the State called the neighbors who had helped the rape victim, and their testimony included not only the identifications they made when the events occurred, but also in-court identifications of Petitioner. The neighbor who had chased the assailant "identified defendant in the courtroom, noting that defendant had 'gained some weight.'" *Exh. AA* at 11. And, "[a]lthough it had been a long time since the incident," the neighbor who called 911 "identified defendant in the courtroom." *Id.* Mrs. Robertson also testified at trial and testified as to her somewhat equivocal identification at the time of the events, but did not make an in-court identification. *See id.* at 13.

---

[2] The State also played a tape of the first officer who found Petitioner, without objection by the defense. There is no indication that his testimony was significant other than to show that he was the first officer who encountered Petitioner that night. *See Exh. Z* at10; *Exh. AA* at 13.

At trial, Petitioner took the stand and testified as follows. After leaving the Welcome Inn bar, he observed open door to a house. He decided to enter it and then stole a purse. He then ran toward his sister's or his mother's house, but was then stopped and questioned by the police. In his trial testimony, Salomon admitted that he had a prior felony conviction, but disavowed his prior statements to the police about being in both of the victims' houses and taking the purse. *See Exh. Z* at 13; *Exh. AA* at 15.

In the direct appeal, Petitioner raised only one issue, reasserting that his statements to the officers should have been suppressed. After exhausting this issue unsuccessfully, Petitioner then instituted state habeas proceedings *pro se*. *See Exhs. R-FF*. There, as here, he made three claims: (1) "no objections were raised by public defender and the district attorney violated my constitutional rights;" (2) "there was no DNA, no fingerprints, no semen, no hair and no fibers to convict me;" and (3) "the witness said 'I think Mr. Solomon was the one.'" *Exh. FF* at 3.

## III.  Analysis

If a state court addresses a claim on the merits, a federal court cannot grant an "application for a writ of habeas corpus" unless the state decision was (1) "contrary to" or an "unreasonable application" of "clearly established" Supreme

Court precedent or (2) an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[3] However, here the state court did not address the claims on the merits.

The trial judge summarily denied relief holding that "claim of insufficiency of the evidence will not support a petition for post-conviction relief" under *Woods v. State,* 84 N.M. 248, 501 P.2d 692 (Ct. App. 1972). *Exh. GG* at 1. It is not clear, however, whether by this assertion and citation he intended to invoke a procedural bar or whether he intended to invoke a New Mexico rule that holds sufficiency of the evidence arguments are not cognizable in state habeas. Absent a clear ruling, this Court will not engage in a complicated procedural default analysis, since the matter is easily disposed of on the merits. *E.g., Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Romero v. Furlong,* 215 F.3d 1107, 1111 (2000); *Klein v. Neal,* 45 F.3d 1395, 1398-99 (10th Cir. 1995).[4]

---

[3] The Supreme Court and Tenth Circuit have discussed these deferential AEDPA standards in detail, and I will not reiterate them here. *See, e.g., Panetti v. Quarterman,* ___ U.S. ___, 127 S. Ct. 2842, 2858-59 (2007); *Fry v. Pliler,* ___ U.S. ___, 127 S. Ct. 2321, 3326-27 (2007); *Yarborough v. Alvarado,* 541 U.S. 652, 665-66 (2004); *Young v. Sirmons,* 486 F.3d 655, 662-63 (10th Cir. 2007); *Snow v. Sirmons,* 474 F.3d 693, 696-97 (10th Cir. 2007); *Maynard v. Boone,* 468 F.3d 665, 669-71 (10th Cir. 2006), *cert. denied,* ___ U.S. ___, 127 S. Ct. 1819 (2007); *Stevens v. Ortiz,* 465 F.3d 1229, 1234-35 (10th Cir. 2006), *cert. denied sub nom, Zavaras v. Stevens,* ___ U.S. ___, 127 S. Ct. 1833 (2007).

[4] This is the approach a panel of the Tenth Circuit took in similar circumstances. There a sufficiency of the evidence claim was not raised on direct appeal but was raised in a pro se state habeas petition. *See Guzman v. Williams,* 185 F.3d 874 (10th Cir. 1999) (unpublished and

Under *Jackson v. Virginia*, evidence of guilt is sufficient if "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979). Petitioner complains that no direct physical evidence connected him with the rape and that the identification by one eyewitness was equivocal. However, a prosecutor need not present direct evidence for a conviction to pass constitutional muster. Circumstantial evidence alone is sufficient. *See id.* at 324-25.

Here, the prosecution in fact submitted more than just circumstantial evidence. It also introduced eyewitness testimony and statements by Petitioner. Salomon complains about the concreteness of one eyewitness statement and asks this Court to reweigh evidence and credibility, something this Court may not do. Instead, I must look to all of the evidence in the light most favorable to the prosecution. *E.g., id.* at 326. Because the evidence is plainly sufficient to satisfy due process, I recommend that Petitioner's second and third claims be rejected as without merit.

Under *Strickland,* Petitioner must show that counsel's conduct was

---

available at 1999 WL 430059).

constitutionally deficient and that but for the conduct, the result of the proceeding would have been different.  The inquiry is a highly deferential.  Failure to meet either prong defeats an ineffectiveness claim, and if it is easier to dispose of a clam on the prejudice prong, that is the course the court should follow.  *E.g., Strickland,* 466 U.S. at 689, 697; *Smith v. Robbins,* 528 U.S. 259, 286, n.14 (2000); *Barkell v. Crouse,* 468 F.3d 684, 689-90 (10th Cir. 2006); *Bland v. Sirmons,* 459 F.3d 999, 1030 (10th Cir. 2006).

In denying Petitioner's claim that his attorney did not make any objections at trial, the state court ruled that since Petitioner "did not explain what objections trial counsel should have made or how the defense was prejudiced," his ineffectiveness claim was without merit.  *Exh. GG* at 1.  In essence, the trial judge considered Salomon's assertions "conclusory."  It is not clear whether the trial judge so held as a matter of state pleading rules or as a matter of substantive federal constitutional law.  Federal law is not entirely clear, but a number of federal courts, including the Tenth Circuit, do hold that conclusory allegations or speculation are insufficient to establish federal habeas relief, whether under *Strickland* or otherwise.[5]  There is no clearly established Supreme Court precedent addressing

---

[5] *E.g., Colbert v. Ward,* 183 Fed. Appx. 704, 706 (10th Cir. 2006) (the state court's decision was not "contrary to" or "unreasonable under AEDPA because petitioner made

11

the issue at all, much less holding differently.[6]  Thus, I cannot conclude that the trial judge's general approach on the prejudice prong is "contrary to" within the meaning of AEDPA.

---

"conclusory and vague allegations regarding his trial counsel's professionally unreasonable conduct" and he "presented no evidence that would demonstrate there is a reasonable probability he would not have entered into the guilty plea but for the alleged errors of his counsel.  As such there is no prejudice."); *Snyder v. Addison,* 89 Fed. Appx. 675, 681 (10th Cir. 2004) ("petitioner refers in conclusory fashion to a number of failures of his trial counsel that allegedly prejudiced him at trial . . . conclusory allegations are insufficient to meet the prejudice prong of *Strickland,*" citing *United States v. Mealy,* 851 F.2d 890, 908 (7th Cir.1988)and *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)"); *see also, e.g., Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir. 1985) ("at very least a defendant must make more than merely speculative assertions."); *United States v. Holmes,* 406 F.3d 337, 361 (5th Cir. 2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Duran v. Walker,* 223 Fed. Appx. 865, 875 (11th Cir. 2007) (petitioner's claim that "an expert witness would have prompted the jury to believe his testimony and disregard the statements he made during the police interview is conclusory and speculative, and does not amount to a showing of prejudice [and fails] to satisfy either prong of the *Strickland* standard"); *Martinez v. Bartos,* 2006 WL 2850059, *15 (D.Ariz.) (D.Ariz.,2006) ("Without even an allegation of specific prejudice, let alone some concrete examples of such prejudice, petitioner's claim must fail.  Petitioner's unsubstantiated, conclusory claim of ineffective assistance . . . is insufficient, without more, to establish ineffective assistance of counsel.").

[6]    The Supreme Court has mentioned the same concept in a habeas decision.  In a case where the petitioner insisted on representing himself at trial and waived a jury, he later brought a counseled habeas petition and challenged whether the trial judge has jurisdiction to try him.  In the upholding the waiver, the Court mentioned that:

> If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.

*Adams v. U.S. ex rel. McCann,* 317 U.S. 269, 281 (1942).

Taking defense pleadings as a whole, however, I think the basis for Salomon's ineffectiveness claim and the prejudice flowing from the alleged errors is apparent. In the briefs before the New Mexico Supreme Court, Petitioner's attorney mentioned that trial counsel did not object to the introduction of the rape victim's videotaped testimony from the commitment hearing or her audio-taped statement with police. *See Exh. Z* at 8, 12. In the alternative then, I find the claim to be without merit for the reasons set forth below.

There is no indication that the rape victim was not available to testify at trial – she was 85 years old at the time. *Exh. AA* at 7. Nevertheless, defense counsel's decision not to insist on calling an elderly person as a live witness is understandable and reasonable given that there was a videotape of her testimony from a prior proceeding where she was under oath. Furthermore, even if she had been called as witness, a defense tactic of not cross-examining her to avoid antagonizing the jury would have been utterly reasonable.

I further find that there could be no prejudice under *Strickland* given the other evidence such as Salomon's admission of being in her house and the neighbors identifying him as the person who chased the victim. For the same

reasons, any Confrontation Clause violation would be harmless.[7]

Having failed to demonstrate constitutionally ineffective conduct or prejudice, I also recommend that Petitioner's only remaining claim also be rejected.

Wherefore,

IT IS HEREBY RECOMMENDED that the § 2254 petition be dismissed as without merit.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the ten-day period  if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] *See, e.g., Brown v. Uphoff,* 381 F.3d 1219, 1226 (10th Cir. 2004) (Confrontation Clause errors subject to harmless error analysis); *Hawkins v. Hannigan,* 979 F. Supp. 1397, 1402 (D. Kan. 1997), *aff'd* 185 F.3d 1146 (10th Cir. 1999) ("The stipulated agreement clearly reflects a strategic choice to not have the frail and elderly [rape] victim [of a  testify before the jury" and, even if right to confrontation was violated, there was no prejudice due to the other evidence against the defendant, including his admission that he was in the victim's house and a witness placed defendant near the home at the time of the assault).